## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**Afro D. Lenzley,**

      **Plaintiff,**

                                                **Case No. 2:05-CV-00469**

**v.**                                              **JUDGE SMITH**

                                                  **Magistrate Judge Abel**

**The D & B Corporation,**
**or D&B, Inc, or**
**Dun & Bradstreet,**

      **Defendant.**

### OPINION AND ORDER

      Plaintiff Afro D. Lenzley ("Plaintiff" or "Lenzley"), who is proceeding *pro se*, brings this action against Defendant The D & B Corporation, or D&B, Inc, or Dun & Bradstreet ("Defendant" or "D&B"). Plaintiff asserts claims of age and race discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621, Ohio Revised Code Chapter 4112 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) as well as a state law claim for unpaid commissions. Defendant D&B has moved for summary judgment with respect to all claims (Doc. 30). For the reasons that follow, the Court **GRANTS** Defendant D&B's Motion for Summary Judgment.

## I.  FACTUAL BACKGROUND

This case arises out of the termination of Plaintiff, Afro Lenzley's, employment.  In December 2002, Plaintiff Lenzley began his employment as a Consultant in Defendant D&B's Sales and Marketing Solutions ("S&MS") group.  Plaintiff is an African-American and was forty-six years old at the time of hiring.  Plaintiff reported to Robert Preston, Regional Vice President - Central Region.  Mr. Preston participated in Plaintiff Lenzley's hiring.  Mr. Preston is a Caucasian and was over forty years old when Plaintiff Lenzley was hired.  As a Consultant, Mr. Lenzley was expected to become an expert on D&B products and services and sell those products and services to existing D&B clients, as well as cultivate new opportunities with existing clients.  Mr. Lenzley was also expected to reach out to other D&B field professionals, including Relationship Managers and Global Customer Managers, to ensure continuity with the customers in account planning and strategy.  Plaintiff Lenzley earned a base salary as well as monthly commissions from the deals he actively closed.  Target sales goals for each individual sales Consultant were set by management and the Consultant.

D&B reviews its Consultants on a quarterly basis, assessing them in two areas, Individual Performance Goal Results ("IPGR") and Leadership Competency Assessment ("LCA").  A Consultant's IPGR rating evaluates the revenue objectives, set by the Consultant and his supervisor, as well as the Consultant's personal development territory management.  The LCA portion of the evaluation assesses the Consultant's ability to act strategically, develop relationships, collaborate, drive results, and meet customer expectations.

In Plaintiff Lenzley's First Quarter Review for 2003, Mr. Preston rated him "Too New to Rate" for his overall IPGR rating and "More is Expected" as his overall LCA rating.  In the Comment section of Plaintiff's review, Mr. Preston stated "Afro has the ability to perform at a

much higher level.  Afro's lack of success in meeting activity metrics is hindering his

development.  This lack of activity is impacting pipeline growth and ultimately his ability to

reach his sales targets."  (Lenzley Depo. at Ex. D).  In August 2003, eight months later, Plaintiff

Lenzley's overall 2003 Second Quarter Review was worse than his 2003 First Quarter Review.

Mr. Preston again rated Plaintiff's overall IPGR and overall LCA as "Unsatisfactory" and

commented that Mr. Lenzley failed to fulfill his "commitment of 6 to 8 face to face calls per

week" and would likely "be challenged to meet his target for Q3 and the Total Year." (Lenzley

Depo. at Ex. E).  In Mr. Lenzley's third quarter, his IPGR rating was "Unsatisfactory" and his

LCA rating was "More is Expected."  Mr. Preston commented that "Afro's continued lack of

activity and pipeline development are the reasons that he is performing so poorly" and "[Afro]

has difficulty connecting customer need to our solution.  This is due to his lack of product

knowledge.  He has also had difficulty clearly communicating our DUNSRight Process."

(Lenzley Depo. at Ex. F).  In late 2003, Mr. Preston placed Plaintiff Lenzley on a Performance

Improvement Plan ("PIP"), requiring him to provide Mr. Preston with weekly reports of his sales

activity, and to meet his third and fourth quarter and overall objectives for the year.  In February

2004, Mr. Preston conducted Plaintiff Lenzley's 2003 Fourth Quarter/Year End Review.  Again,

Mr. Lenzley's overall IPGR rating was "Unsatisfactory" and his overall LCA rating was "More

is Expected."  Mr. Preston noted that Plaintiff Lenzley

> . . . continues to have low activity levels.  He is not able to sustain 6-8 calls (face to face
> & conference calls per week).  As a result of his low call activity, he is unable to engage
> his leader in more sales calls.  Afro has been unable to acheive and maintain a 3X
> pipeline.  Afro did not achieve his professional development requirement, join the DMA
> or become an "expert" on a specific industry. * * * *
>
> Due to the poor performance in the first 3 quarters, Afro did not have the pipeline
> to achieve his [objectives] in 2003.

In March 2004, Defendant D&B realigned the S&MS territories and eliminated three

positions: Plaintiff Lenzley, Anita Sizemore, Hispanic, age 57, and Scott Sonnedecker, Caucasian male, age 47.  Mr. Preston called Plaintiff Lenzley and informed him of the realignment and that his position had been eliminated.  Mr. Preston did not tell Plaintiff the reasons for D&B's realignment.  Defendant D&B states that it took this action to free up resources from less profitable ventures and fund the development of S&MS's Strategic Branch in New York City.  As a result of the realignment, Plaintiff Lenzley's "Cincinnati territory" Consultant position was eliminated and his accounts were redistributed to other employees throughout the Central Region based on proximity to the client.

At the same time Defendant D&B realigned the S&MS territories, a Consultant position became vacant in the "Cleveland territory," which was a part of the Central Region, supervised by Mr. Preston.  Defendant D&B posted the position.  Plaintiff Lenzley testified that he was aware this position was posted externally, but admits he did not formally apply for the position because he was not aware that the position was posted internally.  (Lenzley Depo. at 40-41). Instead, Mr. Lenzley "requested of my supervisor, Bob Preston, that he give me the accounts." (Lenzley Depo. at 40-41).  Mr. Lenzley contends he was denied the Cleveland Consultant position because of his age and race. (Pl's Memo. in Opp. at 2).  Defendant D&B filled the position with Mike Fleming, a Caucasian male age 35.

On November 24, 2004, Mr. Lenzley filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  The EEOC closed its file on Mr. Lenzley's charge because it was unable to conclude that the information obtained establishes violations of the statutes.  After February 5, 2005, Mr. Lenzley received his right to sue letter.  Plaintiff Lenzley filed the instant lawsuit on May 12, 2005.

## II.  SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which

provides:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to
> judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate,

however, if the opposing party fails to make a showing sufficient to establish the existence of an

element essential to that party's case and on which that party will bear the burden of proof at

trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial

Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable

inferences in favor of the nonmoving party, and must refrain from making credibility

determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

133, 150-51 (2000).[1] The Court disregards all evidence favorable to the moving party that the

---

[1] *Reeves* involved a motion for judgment as a matter of law made during the course of a
trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56.
Nonetheless, standards applied to both kinds of motions are substantially the same. One notable
difference, however, is that in ruling on a motion for judgment as a matter of law, the Court,
having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S.
at 150. In contrast, in ruling on a summary judgment motion, the Court will not have heard all of
the evidence, and accordingly the non-moving party has the duty to point out those portions of
the paper record upon which it relies in asserting a genuine issue of material fact, and the court
need not comb the paper record for the benefit of the nonmoving party. *In re Morris*, 260 F.3d
654, 665 (6th Cir. 2001). As such, *Reeves* did not announce a new standard of review for
summary judgment motions.

jury would not be required to believe.  *Id.*  Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses.  *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice.  For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment.  *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"  *Id., quoting Liberty Lobby*, 477 U.S. at 257.  The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion.  *Id.*  It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'"  *Id., quoting Matsushita*, 475 U.S. at 586.

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Id.* at 1479-80.  That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

### III.  DISCUSSION

As an initial matter, Plaintiff Lenzley contends that Defendant D&B has unlawfully

6

failed and refused to provide information he has requested. (Pl's Memo. in Opp. at 11).
Additionally, Plaintiff Lenzley claims that Defendant D&B maintains a pattern of discrimination
based on age and race, and that he was denied a lateral position and terminated because of his
race and age.  Mr. Lenzley further alleges that he was unlawfully subjected to an ageist and
racially hostile environment.  Plaintiff Lenzley has also alleged that he suffered unlawful
retaliation.  Finally, Mr. Lenzley claims that Defendant D&B has not paid him the proper
amount of commissions.  Defendant D&B argues that it is entitled to summary judgment on each
of Plaintiff's claims.  The Court will address Defendant's arguments in favor of summary
judgment for each claim in turn.     **A. Alleged Denial of Documents**

Plaintiff Lenzley claims he was "hindered" in his "ability to further substantiate his claim
by [Defendant's] failure and refusal to provide the data requested." (Pl's Memo in Opp. at 11).
Defendant D&B claims that Plaintiff's assertions are unfounded.  This Court agrees.

The August 22, 2005 Preliminary Pretrial Order set an April 3, 2006 deadline for
completing discovery.  Plaintiff Lenzley, however, did not serve Defendant D&B with a request
for production of documents during this time and his service of interrogatories on March 22,
2006, were untimely because they were not served at least 30 days prior to the close of
discovery.  *See* Fed. R. Civ. P. 33.  Instead, on June 8, 2006, two months after the close of
discovery, Plaintiff served Defendant D&B with 13 subpoenas *duces tecum*.  This Court quashed
those subpoenas on July 27, 2006, noting that "Plaintiff made no attempt to seek an extension of
the discovery deadline, nor has he provided any explanation for why he was unable to serve the
subpoenas in a timely manner."

Accordingly, the Court rejects Plaintiff's claims that Defendant has improperly refused to
provide documentation to Plaintiff.

**B.     Age and Race Discrimination**

In considering age and race discrimination claims under O.R.C. Chapter 4112, the Ohio Supreme Court has adopted the tests established by the federal courts for assessing claims under parallel anti-discrimination statutes.  *Plumbers and Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Commission*, 66 Ohio St.2d 192, 196 (1981).  Thus, the Court will address Mr. Lenzley's age discrimination claim under O.R.C. Chapter 4112 and his ADEA claim together.  Likewise, Mr. Lenzley's race discrimination claims under O.R.C. Chapter 4112 and his Title VII claim will be addressed together.

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against  any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(A)(1).  In a race discrimination action, the plaintiff may prove discrimination by direct evidence or by establishing a *prima facia* case.

Similarly, the ADEA provides that it shall be unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate with respect to compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a).  The ADEA applies to individuals forty years of age or older.  29 U.S.C. § 631(a).  A plaintiff who brings a claim under the ADEA must prove that age was a determining influence in the adverse action that the employer took against him.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000); *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 514 (6th Cir. 1991).

**1.     Pattern-or-Practice Discrimination.**

Though it is not entirely clear whether or not Plaintiff Lenzley is proceeding on a pattern-

or-practice theory of discrimination, the Court will analyze such a claim.

Plaintiff Lenzley claims that "Defendant maintained/maintains a pattern of discrimination based on but not limited to age, gender and/or race." (Pl's Memo. in Opp. at 8, 18)  In support of this claim, Plaintiff has submitted charts and statistical evidence.[2]  During the first stage of a pattern or practice case, the plaintiff must "demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers." *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 360 (1977).  The Sixth Circuit, however, has held "that the pattern-or-practice method of proving discrimination is not available to individual plaintiffs." *Bacon v. Honda of America Manufacturing, Inc.*, 370 F.3d 565, 575 (6th Cir. 2004). The *Bacon* Court reasoned "that a pattern-or-practice claim is focused on establishing a policy of discrimination; because it does not address individual hiring decisions, it is inappropriate as a vehicle for proving discrimination in an individual case. *Id.*[3]

_____

[2]Charts and statistics can be utilized by an individual plaintiff seeking to support a disparate impact claim.  Plaintiff has not asserted a disparate impact claim, but even if he had, the Court must exclude Plaintiff's charts and statistics.  First, the charts and statistics are unauthenticated and appear to be Plaintiff's own calculations or interpretations of data.  Second, the statistics offered by Plaintiff are not relevant to the particular issue of discrimination (whether characterized as disparate impact or disparate treatment).  As the Sixth Circuit stated, "the mere presence of a disparity in an employer's work force is not enough to establish a *prima facie* case of disparate impact.  Disparities occur naturally in work forces for a multitude of non-discriminatory reasons." *Abbott v. Forge, Inc.*, 912 F.2d 867, 875 (6th Cir. 1990).  For example, Plaintiff's statistics are not sufficiently probative to infer discrimination because they fail to provide information on the number of qualified persons in the protected class in the relevant labor pool. *See e.g., Simpson v. Midland-Ross Corp.,* 823 F.2d 937, 943 (6th Cir. 1987).  Thus, the Court concludes that Plaintiff's charts and statistics lack sufficient weight to support a claim of age or race discrimination.

[3]The *Bacon* Court's holding is consistent with Ohio case law. *See e.g., Alboaugh v. City of Columbus*, 725 N.E.2d 719, 723, 132 Ohio App.3d 545, 550 (Franklin Co. 1999) (holding that there are only two theories of employment discrimination available to the individual plaintiff: disparate treatment and disparate impact).

Accordingly, because Plaintiff Lenzley is bringing his claim as an individual, he cannot proceed on the pattern-or-practice method of proving discrimination.  Therefore, Defendant D&B is entitled to summary judgment on this claim.

### 2.      Disparate Treatment

In order to establish an employment discrimination case, a plaintiff must either present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment.  *White v. Columbus Metropolitan Housing Auth.,* 429 F.3d 232, 238 (6th Cir. 2005).  Plaintiff Lenzley contends he has offered both direct and circumstantial evidence of discrimination.  (Pl's Memo. in Opp. at 3, 15, 16).

### a.      Direct Evidence of Age or Race Discrimination

Mr. Lenzley contends that Messrs. Fleming's and Hellmann's failure to "invite me to be part of the team, make calls, or conduct planning sessions" qualifies as direct evidence of age and race discrimination. (*See* Pl's Memo. in Opp. at 38).  This Court disagrees.

"In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). "For example, a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). However, "isolated and ambiguous statements ... are too abstract, in addition to being irrelevant and prejudicial, to support a finding of discrimination." *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 380 (6th Cir. 1993) (*quoting Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 314 (6th Cir. 1989)).  In other words, the Court must examine not only the

10

substance of any allegedly discriminatory evidence, but also determine whether there exists any causal connection between the purported animus and the adverse employment action.

In the present case, Plaintiff Lenzley admits that no D&B employee ever used any racially charged language, referred to his age, or otherwise disparaged him during his employment with Defendant D&B. (Lenzley Depo. at 46, 65, 161).  The alleged failures of Plaintiff Lenzley's co-workers to include Plaintiff  in their calls and meetings does not require the conclusion that age or race was at least a motivating factor in Mr. Lenzley's termination. Therefore, this Court finds that Mr. Lenzley cannot prove age or gender discrimination by direct evidence, and consequently, the Court will determine whether Mr. Lenzley has offered indirect and circumstantial evidence of an age- or race-based motive under the familiar *McDonnell Douglas* burden-shifting approach.

### b.    *Prima Facie* **Case of Age or Race Discrimination**

Plaintiff Lenzley claims he can state a *prima facie* case of age and race discrimination in his termination and also in D&B's failure to hire him for the Cleveland Consultant position.

Defendant D&B first contends Plaintiff's "race and age discrimination claims fail as a matter of law" because "Plaintiff simply cannot overcome the inferences of lack of discrimination and violations of Title VII and the ADEA."  (Def's Mot. for Summ. J. at 8-9). More specifically, Defendant asserts it is entitled to summary judgment because of: (1) the "same actor" inference which arises because Mr. Preston was both the hirer and firer and Plaintiff's employment lasted such a short time; and (2) the "same group" inference which arises because Mr. Preston was in the same protected class (persons over forty) as Plaintiff.  Defendant relies on *Wexler v. White's Fine Furniture*, 317 F.3d 5641 (6th Cir. 2003) for support.  In *Wexler*,

11

however, the Sixth Circuit explicitly stated "We therefore reject the idea that a mandatory inference must be applied in favor of a summary-judgment movant whenever the claimant has been hired and fired by the same individual. Such an approach strikes us as being contrary to the Supreme Court's opinion in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)." *Id.* at 571. The *Wexler* Court also rejected the application of the "same-group" inference as a basis for summary judgment stating: "This inference has been explicitly rejected by the Supreme Court in the context of race and sex discrimination . . . We see no reason why [the Supreme Court's] reasoning should not apply to age discrimination cases. Thus, the district court erred when it invoked the same-group inference at the summary judgment stage." *Id.* at 574. Therefore, this Court, based upon *Wexler*, must reject Defendant's argument that it is entitled to summary judgment on Plaintiff's discrimination claims due to the "same actor" and "same group" inferences.

Defendant D&B next argues that it is entitled to summary judgment because Plaintiff Lenzley cannot establish a *prima facie* case of age or gender discrimination and additionally because Plaintiff is unable to meet his burden to prove that D&B's proffered reasons for its actions are a mere pretext for discrimination. (Def's Mot. for Summ. J. at 10). This Court agrees.

The elements of a *prima facia* case of employment discrimination based on age or race are: (1) that the plaintiff is a member of a protected class (over 40 years of age for an age discrimination claim); (2) that the plaintiff was qualified for the position; (3) that the defendant subjected the plaintiff to an adverse employment action; and (4) that the defendant did not subject similarly situated persons outside the protected class to such adverse action. *See St.*

12

*Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993);  *Kesselring v. United Technologies Corp.*, 753 F. Supp. 1359, 1364 (S.D. Ohio 1991); *Simpson v. Midland-Ross Corp*., 823 F.2d 937, 940 (6th Cir. 1987); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

     If the plaintiff establishes a *prima facie* case, then the burden shifts to the defendant to come forward with a legitimate, non-discriminatory reason for the adverse action against the plaintiff.  *See id.*; *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  If the defendant comes forward with a legitimate, non-discriminatory reason for its actions, then the burden shifts to the plaintiff to prove that the defendant's proffered reason is a mere pretext for discrimination. *See id.*; *Burdine*, 450 U.S. at 253.  "The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens.  The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the  plaintiff remains at all times with the plaintiff."  *Burdine*, 450 U.S. at 253.

     This burden-shifting framework is intended to be flexible in differing factual circumstances.  *See Christian v. Wal-Mart Stores, Inc,*. 252 F.3d 862, *869 -870 (6th Cir. 2001) *citing Burdine,* 450 U.S. at 254 n. 6.  In order to state a *prima facie* case of age and race discrimination in failure to hire or rehire, a plaintiff is required to show that: (1) he was a member of a protected class, i.e., African-American; at least forty years of age; (2) he qualified for the position in question; (3) he applied for the position; and (4) he was rejected in favor of persons who are not members of the protected class. *See Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1095 (6th Cir.1996); *Wagner v. G.A. Gray Company*, 872 F.2d 142, 145 (6th Cir. 1989).

     It is uncontroverted that Mr. Lenzley belongs to a protected class; he is an African

13

American and over forty years in age.  D&B does not dispute that Mr. Lenzley was subject to an adverse action.  With respect to Plaintiff's unlawful termination claim, the parties dispute, however, whether Mr. Lenzley has proved that he was treated differently from similarly-situated persons outside of his protected class.  In addition, with respect to Plaintiff's failure to hire/rehire claim, the parties dispute whether Plaintiff properly applied and was qualified for the Cleveland Consultant position.  Finally, the parties dispute whether or not Plaintiff has met his burden to prove that Defendant D&B's proffered reasons for its actions are a mere pretext for discrimination.

### i.    Treatment Different Than Similarly Situated Employees

To establish the fourth element of a *prima facie* case of discrimination in his termination, Mr. Lenzley must establish that all relevant aspects of his employment situation were "nearly identical" to those of the employee who was allegedly treated more favorably.  *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994).  To be deemed "similarly situated," the comparable employee "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).  In determining whether an allegedly comparable employee is similarly situated, the ultimate question is whether "all of the *relevant* aspects of [his] employment situation were 'nearly identical' to those of the [comparator's] employment situation." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998).

Plaintiff Lenzley has alleged that he was treated differently than other similarly-situated

white males under the age of forty.  (Pl's Memo. in Opp. at 13, 16, 18, 29, 30).  Plaintiff claims that "the following non-minority employees received more favorable treatment than he did: Reed Pomslosky; James Sylvestre; Richard Kelly; Timothy Sutten; George Hollister; Robert Van Iderstine; Jay Sherwood; and Sara Pauly." (Pl's Memo. in Opp. at 30).  Beyond this conclusory allegation, Plaintiff Lenzley gives only one example of a similarly-situated white male he contends was treated better.  He claims James Sylvestre, Caucasian male and Principal Consultant in the S&SM Region, did not achieve his goals for three years in a row, but was not terminated.  (Pl's Memo. in Opp. at 13).  Defendant D&B argues that James Sylvestre was not similarly situated to Mr. Lenzley because Sylvestre was a Principal Consultant which has different job requirements and responsibilities than a Consultant. (Def's Mot. for Summ. J. at 11). Defendant explained that a Principal Consultant required a technical background, and a Principal Consultant is responsible for higher profile accounts and driving D&B's database platform nationwide.  *Id*.  A Consultant like Plaintiff, in contrast, was not required to have a technical background and was responsible for driving the negotiation of individual contracts with customers. *Id*.  Additionally, Consultants and Principal Consultants were subject to different compensation plans.  *Id*.  Like Sylvestre, Richard Kelly, Reed Pomslosky, George Hollister, Timothy Sutton and Robert Van Iderstine were Principal Consultants.  Jay Sherwood and Sara Pauly were both Application Specialists and also were not part of the S&MS group.  Defendant D&B also points out that unlike Plaintiff Lenzley,  *all* other Consultants reporting to Mr. Preston *met and exceeded* their year end revenue targets for 2003.  (Def.'s Mot. for Summ. J. at 11). Specifically, Dan Clune achieved 102.11% of his revenue target; Curtis Rogers achieved 108.21% of his revenue target; David Garathy achieved 117.47% of his revenue target; Todd Fach achieved 122.61% of his revenue target; and Carol Sarkensian achieved 137.78% of her

revenue target. (Wilkund Aff. ¶ 19, Ex. 3).

In the instant case, the Court has reviewed the evidence Plaintiff Lenzley has submitted, and based upon *Mitchell* and *Ercegovich*, concludes that the factors cited by Defendant D&B make clear that Reed Pomslosky, James Sylvestre, Richard Kelly, Timothy Sutten, George Hollister, Robert Van Iderstine, Jay Sherwood, and Sara Pauly were not similarly situated to Mr. Lenzley in "all of the relevant aspects." Thus, Plaintiff Lenzley has failed to establish a *prima facie* case of age and race discrimination in his termination and Defendant D&B is consequently entitled to summary judgment in its favor on these claims.

> **ii.    Application and Qualification for the Cleveland Consultant Position**

Defendant D&B contends that Plaintiff Lenzley is unable to establish a *prima facie* case of age or race discrimination in its failure to hire/rehire Plaintiff for the Cleveland Consultant position because Plaintiff has not established (1) that he applied for the position; and (2) that he is qualified for the position.

As Defendant points out, where an employer has a formal mechanism by which interested candidates can apply, a plaintiff cannot state a *prima facie* case of discrimination in failure to hire/rehire unless the plaintiff applied for the position. *See Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1022 (6th Cir. 2000), *rehearing and rehearing en banc denied* (2001); *Wagner,* 872 F.2d at 145.   In the present case, the record shows that Defendant D&B had a formal mechanism by

16

which candidates interested in an open positions could apply.  In fact, it was through this mechanism that Plaintiff Lenzley admits that he learned about, applied for, and obtained the Cincinnati Consultant position. (Lenzley Depo. at 41).  Plaintiff Lenzley also testified that he was aware that the Cleveland Consultant position was posted externally, but admits he did not formally apply for the position. (Lenzley Depo. at 40-41).  Instead, Mr. Lenzley "requested of my supervisor, Bob Preston, that he give me the accounts." *Id*.  Thus, based upon Plaintiff Lenzley's own admission that he did not formally apply, he cannot establish a *prima facie* case of discrimination in failure to hire/rehire.

Moreover, this Court agrees with Defendant D&B that Plaintiff cannot show that he was qualified for the Cleveland Consultant position.  "[I]n order to show qualification, an employee must show that he was performing his job at a level which met his employer's legitimate expectations at the time of his dismissal." *Murphy v. University of Cincinnati*, 72 Fed.Appx. 288, *293, (6th Cir. 2003),( *citing McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990)).  Plaintiff Lenzley consistently received unsatisfactory reviews.  Additionally, Mr. Lenzley was the lowest performing Consultant reporting to Robert Preston at the time and also the only Consultant who failed to meet his revenue target for 2003.  Thus, the record shows that Plaintiff was not meeting expectations and consequently Plaintiff cannot claim he was qualified. For this additional reason, the Court finds that Plaintiff has failed to establish a *prima facie* case of age or race discrimination for failure to hire/re-hire.

### iii.   Pretext

Defendant D&B argues that even if Mr. Lenzley had made a *prima facie* case of age or race discrimination, D&B had a legitimate, non-discriminatory reasons for its actions and that Mr. Lenzley identifies no evidence establishing that D&B's explanation for its actions was

17

pretextual.  This Court agrees.

"An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805-06 (6th Cir. 1998).  "In challenging an employer's action, an employee 'must demonstrate that the employer's reasons (each of them, if the reasons independently caused [the] employer to take the action it did) are not true.'"  *Id.* (*quoting Kariotis v. Navistar Int'l Trans. Corp.*, 131 F.3d 672, 676 (7th Cir. 1997)).

In examining whether the stated reason is pretext, the Court must determine whether the employer reasonably relied on the particularized facts before it at the time it made the employment decision.  *Smith*, 155 F.3d at 807.  The employer is not required to show that it left no stone unturned; rather, the issue is whether the employer made a reasonably informed and considered decision before taking the adverse employment action.  *Id.*  The Court should not blindly accept the proffered reason as honest.  *Id.*  If the employee adduces evidence establishing that the employer failed to make a reasonably informed and considered decision, then its decisional process is "unworthy of credence," and any reliance by the employer on such a process cannot be

18

deemed "honestly held." *Id.* at 807-08.

In the instant case, Defendant D&B has articulated legitimate, non-discriminatory reasons for terminating Mr. Lenzley and not rehiring him for the Cleveland Consultant position.  Specifically, Defendant D&B states that Mr. Lenzley was terminated because his job (and two others) were eliminated during a regional realignment to "free up resources from less profitable ventures and fund the development of S&MS's Strategic Branch in New York City.  (Wiklund Aff. ¶ 12). Defendant further states that at the time of the realignment, Plaintiff was neither qualified to fill the Cleveland Consultant position, nor did he apply.

Mr. Lenzley, in an attempt to support his position that D&B's proffered reason was pretext for discrimination, launches an attack on the soundness of Defendant's business decision to realign.  For example, Plaintiff opines:

> "Even if for sake of argument when you consider the other individuals terminated . . . their salaries if included in the territory realignment would not sustain the funding necessary to start a Strategic Branch in NY . . . In addition, Plaintiff's customer base was still supported by Consultants and Principal Consultants in locations further away than the Cincinnati territory . . . Given the frequency of customer calls required by the Defendant, the cost of serving these accounts would create a significant increase rather than a savings . . . *The Plaintiffs' [sic] submits that the elimination . . . would not be adequate to*

19

*fund the start up of a Strategic Branch in NY.  Further an operation of this magnitude would include staffing the branch with various positions . . . That doesn't even address the remaining capital required to fund this type of operation.*  **I submit that there was no savings realized to support the territory realignment as a result of the HIRING decision.**

**(Pl's Memo. in Opp. at 4-6) (emphasis in original).  Though Mr. Lenzley attacks D&B's decision to realign, he makes statements that would lend support for D&B's decision to eliminate positions in the Cincinnatti territory.**  In fact, Plaintiff Lenzley seems to argue that Defendant D&B should not have hired him (or anyone) in the first place as a Consultant for the Cincinnati territory:

> Defendants made a decision to place a Sales and Marketing Consultant in the Cincinnati territory without a sound business case or model to support that decision . . . the book of business Defendant created would not support its business objectives in the Cincinnati territory.  As a result, the Plaintiff was given a book of business with a built in impossibility of performance . . . the Cincinnati area offered a less profitable venture . . .

(Pl's Memo in Opp. at 6).  **In any event, it is well-settled that it is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not illegally motivated.**  *See e.g.*, *McDonald*, **898 F.2d at 1160** ("the aim is not to review bad business decisions, or question the soundness of an employer's judgment"); *Ackerman v. Diamond Shamrock Corp.*, **670 F.2d 66, 70 (6th Cir. 1982)** ("[t]he ADEA was not intended as a vehicle for judicial review of business decisions"); *Norris v. Principi*, **254 F.Supp.2d 883, 896** ("a court resolving a discrimination lawsuit does not sit as a super personnel board of review, to

second guess an employer's business decisions").

Viewing the evidence in the light most favorable to Plaintiff Lenzley, the Court finds that Mr. Lenzley has failed to adduce evidence from which a rational trier of fact could reasonably infer that D&B's proffered reasons had either no basis in fact or were not the actual reason for Mr. Lenzley's termination. Thus, Mr. Lenzley is unable to establish pretext as a matter of law. For this additional reason, Defendant D&B is entitled to summary judgment in its favor on Plaintiff's age and race discrimination claims.

C.    Hostile Environment

Mr. Lenzley alleges that D&B created a hostile work environment that was "tough to work in" because of his race and age. (Am. Compl. ¶ 14). Defendant D&B argues that Mr.Lenzley cannot demonstrate an actionable hostile work environment because he has failed to show that he was subject to severe and pervasive harassment based on his age or race. (Def's Mot. for Summ. J. at 17-19). The Court agrees with Defendant D&B.

To establish a claim under Title VII for hostile work environment the plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment, either through words or actions, based on age or race; (3) the harassment unreasonably interfered with plaintiff's work performance and created a hostile or offensive work

environment that was severe and pervasive; and (4) the employer knew or should have known of the charged harassment and unreasonably failed to take prompt and appropriate corrective action. *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834-36 (6th Cir. 1996); *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829-30 (6th Cir. 1999); *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 872 (6th Cir.1997). A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). Both an objective and a subjective test must be applied: the conduct must have been severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as having been abusive. *Id.* at 21-22. Isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000). Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment include:

1. the frequency of the discriminatory conduct;

2. the severity of the discriminatory conduct;

3. whether the discriminatory conduct is physically threatening or humiliating, or a mere offensive utterance;

4. whether the discriminatory conduct interferes with an employee's work performance; and

5. whether the plaintiff actually found the environment abusive.

*Id.* at 21-22; *see also Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) (reciting

factors from *Harris*). The Court has explained:

> These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code." *Id.*, at 80 . . . We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view. *See, e.g., Carrero v. New York City Housing Auth.*, 890 F.2d 569, 577-578 (C.A.2 1989); *Moylan v. Maries County*, 792 F.2d 746, 749-750 (C.A.8 1986); *See also* 1 Lindemann & Grossman 805-807, n. 290 (collecting cases granting summary judgment for employers because the alleged harassment was not actionably severe or pervasive).

*Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

In the instant case, Messrs. Fleming and Hellmann's failure to include Plaintiff in their calls and meetings, and Mr. Preston's placing Plaintiff on a Performance Improvement Plan, do not meet the "severe and pervasive" requirement for unlawful harassment. Plaintiff Lenzley admits that no D&B employee ever used any racially charged language, referred to his age, or otherwise disparaged him during his employment with Defendant D&B. (Lenzley Depo. at 46, 65, 161). Moreover, Plaintiff never complained during his employment that he was subject to an ageist or racially hostile environment. (Lenzley Depo. at 43-44, 152, 158).

Based upon the evidence Plaintiff Lenzley has submitted, the Court concludes that even when the evidence is viewed in the light most favorable to him, Mr. Lenzley has fallen far short of demonstrating that he was subjected to a hostile work environment. Accordingly, Defendant D&B is entitled to summary judgment in its favor on Mr. Lenzley's hostile work

environment claim.

**D.     Retaliation and Constructive Discharge**

It is unclear whether Plaintiff is alleging retaliation.  Defendants argue, and this Court

agrees, that to the extent Plaintiff is alleging retaliation, that claim is without merit. (Def's Mot.

for Summ. J. at 19).

Title VII prohibits an employer from retaliating against an employee who "made a

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  The elements of a *prima facie* case of

retaliation are:

> (1) that he engaged in activity protected by Title VII; (2) that the defendant knew
> of this exercise of his protected rights; (3) that the defendant consequently took an
> employment action adverse to plaintiff; and (4) that there is a causal connection
> between the protected activity and the adverse employment action.

*Stouss v. Michigan Dept. of Corrections*, 250 F.3d 336, 342 (6th Cir. 2001); *see also Jackson v.*

*Pepsi-Cola, Dr. Pepper Bottling Co.*, 783 F.2d 50, 54 (6th Cir. 1986) *cert. denied*, 478 U.S. 1006

(1986).  A plaintiff may satisfy the participation element of a *prima facie* case for retaliation by

showing he reasonably believed his activity was protected. *See Johnson v. Univ. of Cincinnati*,

215 F.3d 561, 582 (6th Cir. 2000).

Plaintiff's retaliation claim fails on its merits because Plaintiff never engaged in any

protected activity.  Indeed, Mr. Lenzley's complaints to Human Resources regarding his

termination were about commissions, vacation pay, and severance. (Lenzley Deop. at 158).   Mr.

Lenzley further admits he never told anyone at D&B that he was being treated unfairly based on

his race or his age. (Lenzley Depo. at 43-44).   Therefore, Plaintiff is precluded from pursuing a

retaliation claim.

Likewise, Plaintiff Lenzley cannot assert a cause of action for constructive discharge because Plaintiff did not resign due to unlawful conditions, but rather was terminated by Defendant D&B.

Accordingly, Defendant ODOT is entitled to summary judgment in its favor with respect to Plaintiff's retaliation and constructive discharge claims.

**E.      State Law Claim for Unpaid Commissions.**

The Court has granted Defendants' Motion for Summary Judgment on Plaintiff's federal claims.  The Court therefore declines to exercise supplemental jurisdiction over Plaintiff's state law claim for unpaid commisssions.  It is well settled that a District Court may decline to exercise supplemental jurisdiction over state-law claims once it has dismissed all claims over which it possessed original jurisdiction.  *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997).  Indeed, the Sixth Circuit has recognized that if all federal claims are dismissed before trial, remaining state claims generally should be dismissed. *Id.*; *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992).  Therefore, pursuant to 28 U.S.C. § 1367(c)(3) and (d), the Court will dismiss Plaintiff's state law claim for unpaid commissions without prejudice.

## V.  CONCLUSION

For all of the foregoing reasons, the Court **GRANTS** Defendant D&B's Motion for Summary Judgment (Doc. 30).

The Clerk shall enter a final judgment in this case, dismissing all Plaintiff's age and race

discrimination claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621, Ohio

Revised Code Chapter 4112 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)

with prejudice.

Plaintiff's state law claim for unpaid commissions is dismissed without prejudice.

The Clerk shall remove Document 30 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

  **/s/ George C. Smith**
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**

26